# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JANET RENDON, Independent Administrator of the Estate of CAROL CZUBERNAT, <br>     Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SERVICES, INC., ARGOSY EDUCATION GROUP, INC., AMY RAY, ANGELA WRIGHT, KIMERI SHULL, CYNTHIA PETERSON, and PATRICK McELROY, <br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10 C 1590 |

## MEMORANDUM AND OPINION

Carol Czubernat committed suicide while she was incarcerated at the Dwight Correctional Center. Plaintiff Janet Rendon, the Independent Administrator of the Estate of Carol Czubernat, filed this action alleging that defendants (entities associated with, or employees of, Dwight Correctional Center) violated Ms. Czubernat's Eighth and Fourteenth Amendment rights as well as Illinois common law in connection with the suicide. Defendants Kimeri Shull, Angela Wright, Cynthia Peterson, and Patrick McElroy (correctional officers at Dwight Correctional Center) move to transfer this action pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion is granted.

**I.    Background**

"When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant." *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229,

2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005). The relevant facts, taken from the well-pled complaint, are as follows.

### A. Initial Arrest and Treatment

On August 1, 2008, Carol Czubernat was arrested and charged with aggravated driving under the influence of alcohol. The same day, Ms. Czubernat was transferred to DuPage County Jail. Prior to her admission, a doctor at Central DuPage Hospital evaluated her for possible suicidal thoughts and evaluated her prescription psychiatric medication (Cymbalta and Tradozone). The jail administration placed her on medical watch from August 2, 2008 to August 5, 2008.

Ms. Czubernat subsequently pled guilty to aggravated driving under the influence and was sentenced to a three-year term of incarceration. Her prescription for Trazodone was discontinued on November 10, 2008, but she remained on Cymbalta while she was incarcerated at DuPage County Jail.

### B. Transfer to Dwight Correctional Center

On November 21, 2009, Ms. Czubernat was transferred to Dwight Correctional Center. On the same day, defendant Amy Ray, a doctor employed by Dwight Correctional Center, saw Ms. Czubernat and performed a mental health evaluation. As part of the evaluation, Dr. Ray reviewed a health information transfer form from DuPage County Jail indicating that Ms. Czubernat had suicidal thoughts in August of 2008 and had been prescribed Cymbalta for depression as well as psychotropic drugs (Depakote, Risperdal, Librium, and Thorazine) in the past year. In addition, Ms. Czubernat told Dr. Ray that she had been diagnosed with depression and anxiety, had received mental health treatment within the last year, had taken Cymbalta and Trazodone, and attempted to commit suicide when she was fourteen years old.

Dr. Ray's treatment plan for Ms. Czubernat consisted of "routine placement" and a referral to a drug treatment program and a work assignment. Dr. Ray also advised Ms. Czubernat that mental health services were available. From November 21, 2008, to February 19, 2009, Ms. Czubernat did not receive mental health treatment or psychiatric medication.

### C. Requests for Mental Health Treatment

On January 24, 2009, Ms. Czubernat completed a medical request form to get confirmation that she did not have a medical hold so she could be transferred from Dwight Correctional Center. On February 4, 2009, her medical hold was lifted.

Between February 12, 2009 and February 26, 2009, Czubernat requested mental health treatment from the medical staff at Dwight Correctional Center multiple times. She submitted medical referral requests on February 12, 2009 and February 17, 2009, requested her anti-depression medication repeatedly on February 12, 17, 20, 25 and 26, 2009, and wrote increasingly distraught letters to the Health Care Unit asking for urgent help on February 20, 25, 26, and 27, 2009.

An unknown psychologist visited Ms. Czubernat on February 13, 2009, and Dr. Ray visited her on February 18, 2009, but neither doctor prescribed medication. Moreover, Dr. Ray declined to moved Ms. Czubernat up on the waiting list to see the psychiatrist. On February 19, 2009, Dr. Ray recommended that Ms. Czubernat try relaxation techniques to manage her anxiety. According to Dr. Ray, Ms. Czubernat denied that she had suicidal ideations.

That same day, Dr. Arthur Funk, an employee of defendant Wexford Health Services, Inc., prescribed Cymbalta but did not examine Ms. Czubernat. On February 25, 2009, Ms. Czubernat wrote a letter to the Health Care Unit addressed to Dr. Yuan stating that she had not received her medication and was suffering from anxiety, panic attacks, and depression. She also

wrote, "The Seg Unit is killing me . . . I am not doing well at all. I am going to lose my mind. Please come to see me. I am shaking constantly. I am unable to sleep . . . Please help me! I can't take it much longer in here. Please get me my meds." Complaint at ¶ 11.

The Health Unit did not give Ms. Czubernat the prescribed Cymbalta until February 26, 2009. Shortly after receiving the Cymbalta, Ms. Czubernat wrote another letter to Dr. Yuan stating she had just received her first dose of Cymbalta and asking for additional medication because lockdown was "driving [her] over the edge" and causing her to have panic attacks, uncontrollable crying attacks, palpitations, and racing thoughts. The following day, Ms Czubernat wrote a third letter to Dr. Yuan describing her panic attacks and stating, "I'm shaking constantly, my hands and legs. My heart is racing. My thoughts are racing. This is an unbearable situation . . . I cannot take the turmoil. Please doctor, help me I am going crazy in here . . . The Cymbalta is not enough. Please help me, this is very urgent." *Id*. at ¶ 55.

On the evening of February 27, 2009, Ms. Czubernat asked defendant Cynthia Peterson (a correctional officer who was part of the Dwight Correctional Center crisis team) for counseling for her anxiety and mental health problems. According to the allegations in the complaint, Ms. Peterson ignored Ms. Czubernat's request for help.

Also on February 27, 2009, defendants Angela Wright and Kimeri Shull (correctional officers at Dwight Correctional Center) allegedly failed to perform cell checks at the mandatory times. Defendant Patrick McElroy (another correctional officer at Dwight Correctional Center) knew Angela Wright had not checked cells property but did not notify his supervisor.

Ms. Czubernat's struggles ended the following day, when Correctional Officer Wright found her lifeless body hanging from her bunk with a plastic bag over her head. The three letters

Ms. Czubernat had written to Dr. Huan were never processed and were found in the mental health inbox on March 2, 2009, two days after Ms. Czubernat's suicide.

### D. This Action

Janet Rendon, Independent Administrator of the Estate of Carol Czubernat, filed this action on behalf of Ms. Czubernat's Estate. In her nine count complaint, Ms. Rendon asserts wrongful death and professional negligence claims against Wexford Health Services (a contractor responsible for medical, mental health, and dental care at Dwight Correctional Center), Amy Ray (a doctor at Dwight Correctional Center), and Argosy Education Group (a contractor responsible for psychological screening, testing, and evaluation of inmates at Dwight Correctional Center) (Counts I-VI). She also asserts Eighth Amendment claims under 42 U.S.C. § 1983 against Amy Ray (Count VII) and Angela Wright, Kimei Shull, Cynthia Peterson, and Patrick McElroy (correctional officers at Dwight Correctional Center) (Count IX). Finally, she contends that Dwight Correctional Center, through Wexford Health Services, had a custom, practice, and policy of denying appropriate mental health care to inmates (Count VIII). In her motion for leave to file a second amended complaint, Ms. Rendon also seeks leave to add § 1983 claims against Dr. Huan, Dr. Funk, and unknown defendants who knew she needed medical treatment.

## II. Discussion

Correctional officers Shull, Peterson, McElroy and Wright have moved to transfer the case to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under §1404(a), the party seeking transfer must demonstrate that: (1) venue is proper in the

transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In addition, "the movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986); *see also Research Automation, Inc. v. Schrader Bridgeport Intern., Inc.*, — F.3d —, No. 09-2232, 2010 WL 4721588, at *3 (7th Cir. Nov. 23, 2010).

In this case, the parties agree that the first two prongs of § 1404(a) are satisfied as venue is proper in this district and the proposed transferee district. Thus, the court will focus on the private interest factors (the convenience of the parties and witnesses) and the public interest factor (the interests of justice).

### A. Convenience of the Parties and Witnesses

When evaluating the private interest factors, the court considers: (1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; (4) the convenience of the witnesses; and (5) the convenience of the parties litigating in the respective forums. *Research Automation, Inc. v. Schrader Bridgeport Intern., Inc.*, — F.3d —, 2010 WL 4721588, at *3. The court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. *Mattsson By and Through Mattsson v. Gerry Wood Products Co.*, No. 95 C 2314, 1997 WL 158334, at * 1 (N.D. Ill. Mar. 31, 1997).

#### 1. Plaintiffs' Choice of Forum

The plaintiff's choice of forum is normally given substantial weight when the court considers a motion to transfer. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F.Supp.2d 731,

736 (N.D. Ill. 2007). Here, Ms. Rendon chose to file suit in the Northern District of Illinois. Standing alone, this fact weighs against transfer.

However, "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim . . . the deference traditionally given to the selection is lessened." *Brady v. Hanger Orthopedic Group, Inc.*, No. 05 C 0492, 2006 WL 2560953, at *2 (N.D. Ill. Aug. 30, 2006). Further, in the face of a weak relationship between the operative facts and the plaintiff's chosen forum, the plaintiff's choice of forum becomes "only one of the many factors the court considers." *D'Ancona & Pflaum LLC v. M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *2 (N.D. Ill. Aug. 2, 2001).

In this case, the connection between the Northern District of Illinois and the operative facts is tenuous. Plaintiff Janet Rendon, the executor of Ms. Czubernat's estate, resides in the Northern District, as do two of Ms. Czubernat's other heirs. However, as discussed below, the operative facts occurred outside this district as Dwight Correctional Center is located in Livingston County, which is in the Central District of Illinois. Accordingly, Ms. Rendon's choice of forum is entitled to minimal weight.

        **2.     Situs of Material Events**

The plaintiff's choice of forum is given less deference if another forum has a stronger relationship to the dispute. *See Powell v. Sparrow Hosp.*, No. 09 C 3239, 2010 WL 582667, at *3 (N.D. Ill. Feb 12, 2010) (collecting cases). Here, Ms. Czubernat's interactions with the defendants and her suicide occurred entirely in Dwight Correctional Center in Livingston County. Accordingly, this factor weighs heavily in favor of transfer.

### 3. Availability of Evidence

The documentary evidence, including Ms. Czubernat's letters and the medical records, all were created at Dwight Correctional Facility and the Illinois Department of Corrections in Springfield, Illinois, Sangamon County, where she was incarcerated prior to the transfer to Dwight Correctional Facility. Both locations are within the jurisdiction of the Central District. Ms. Rendon argues that the location of documents is irrelevant as she is located in the Northern District and has copies of almost all of the relevant documents. She also asserts that an inspection of the cell where Ms. Czubernat committed suicide is likely unnecessary.

The court agrees with Ms. Rendon that the ease of access to evidence and sources of proof favor is neutral as the record does not appear to be voluminous and "[c]hanges in copying technology and information storage . . . have rendered many traditional concerns about document production moot." *Cypress Medical Products, L.P. v. Worthington*, No. 04 C 7034, 2005 WL 936903, at *4 (N.D. Ill. Apr. 18, 2005). Accordingly, this element is in equipoise.

### 4. Convenience of the Witnesses

The party seeking transfer bears the burden of specifying the key witnesses to be called and summarizing their expected testimony. *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167-68 (N.D. Ill. 1995). Moreover, when considering the convenience of witnesses, the court must evaluate the nature and relevance of the expected testimony instead of merely comparing the length of each party's witness list. *Id*. at 1168.

In their motion, the defendants assert that they intend to call unspecified employees of Dwight Correctional Center and/or inmates of Dwight Correctional Center as fact witnesses but do not provide any details. In contrast, Ms. Czubernat's family resides in the Northern District. Ms. Rendon also lists five witnesses from the DuPage County Jail who interacted with Ms.

Czubernat while she was incarcerated there and contends that if the case is transferred to the Central District of Illinois, these witnesses will be outside the court's 100-mile subpoena range. These witnesses filled out the transfer form, performed a medical screening on Ms. Czubernat, or provided medical and mental health treatment to Ms. Czubernat while she was at the DuPage County Jail. Ms. Czubernat told the final witness at the DuPage County Jail that she was suicidal. The record does not indicate whether these witnesses would testify voluntarily in the Central District.

Evidence about Ms. Czubernat's mental health just prior to her transfer to Dwight Correctional Center is relevant, so the existence of these witnesses mitigates against transfer. On the other hand, while the defendant failed to carry its burden of identifying evidence, the court cannot overlook the fact that witnesses from the Dwight Correctional Center likely would not be within this district's subpoena range, either.

Dr. Yuan and Dr. Funk are also on Ms. Rendon's witness list. These doctors are employed by Wexford Health Services and treated or prescribed medicine to Ms. Czubernat while she was incarcerated at Dwight Correctional Center. They both reside in the Northern District. Since both doctors regularly travel from the Northern District to the Central District in connection with their jobs at Dwight Correctional Center, the fact that they reside in this district is irrelevant for transfer purposes.

Next, Ms. Rendon references two consulting experts from outside Illinois but does not state whether they will testify. While the Northern District is more convenient for travelers flying to Chicago-area airports, witnesses flying to the Central District could take a connecting flight to a closer regional airport.

Finally, Ms. Rendon states that she intends to call inmates who were interviewed by the Illinois Department of Corrections in connection with Ms. Czubernat's death. Three of these inmates lived in Cook County, which is in the Northern District, prior to their incarceration. It is unclear whether these inmates will be in custody at the time of trial. Thus, they may be located in the Central District when this case is tried.

In sum, the defendants failed to provide specifics regarding witnesses. Ms. Rendon provided specifics, but overall the convenience of her expected witnesses does not strongly militate against transfer. Therefore, this factor is a weak thumb on the scale against transfer.

### 5. Convenience of the Parties

In assessing the convenience of the parties, the court may consider where the parties reside and their ability to bear the expense of litigating in a particular forum. *See Clearclad Coatings, Inc. v. Xontal, Ltd.*, No. 98 C 7199, 1999 WL 652030 at *11 (N.D. Ill. Aug. 20, 1999). Four of the seven defendants (Kimeri Shull, Cynthia Peterson, Patrick McElroy and Angela Wright) reside in the Central District of Illinois.[1] Next, while Wexford Health Services is not an Illinois corporation and has its principal place of business in Pennsylvania, it contracted with the State of Illinois to provide medical care at Dwight Correctional Center, and therefore conducts business within the Central District. Argosy Education Group is based on the Northern District but also contracted to provide care at Dwight Correctional Center. Dr. Ray resides in the Northern District but like Dr. Yuan and Dr. Funk, chose to accept employment at Dwight Correctional Center.

---

[1] Angela Wright, whose residence was previously unknown, was served with process in Bourbonnais, Illinois, which is in Kankakee County.

With respect to the plaintiff, three of Ms. Czubernat's heirs (Janet Rendon, Michael Czubernat, and William Czubernat) reside in the Northern District and all intend to testify. Ms. Czubernat's fourth relative, Kathleen Czubernat, resides in South Bend, Indiana, and also expects to testify.

Ms. Rendon and Ms. Czubernat's other relatives all prefer this district, which is more convenient for three of them. Four of the seven defendants reside in the Central District, two do business there pursuant to contracts with the Illinois Department of Corrections, and the final defendant travels to the Central District in connection with her job. Ms. Rendon also seeks leave to add two additional defendants, both of whom travel to the Central District in connection with their jobs.

The defendants are all central witnesses in this case as they were allegedly directly involved with the events leading to Ms. Czubernat's death. Ms. Rendon and Ms. Czubernat's other family members are bereaved relatives who presumably have personal knowledge regarding Ms. Czubernat's medical history. Given the defendants' greater depth of involvement during discovery due to their interactions with Ms. Czubernat prior to her death and the significantly greater number of parties who either live or work in the Central District, the convenience of the parties prong favors transfer to the Central District.

### B. Interests of Justice

When evaluating the interests of justice, the court considers: (1) the respective forums' familiarity with the applicable law; (2) the forums' relationship with the cause of action; and (3) "the speed at which the case will proceed to trial". *Research Automation, Inc. v. Schrader Bridgeport Intern., Inc.*, 2010 WL 4721588, at *3.

First, since this court and the proposed transferee court are in Illinois, both fora are equally familiar with Illinois law.

Second, with respect to this district and the Central District's relationship with the cause of action, the Central District is more intimately related to this action. All of the allegedly unconstitutional conduct occurred in the Central District, including Ms. Czubernat's cries for help, what appears to be her worsening mental state, and her death. Moreover, a *Monell* claim is at issue in this case, and Dwight Correctional Center, the location of the alleged pattern and practice of denying appropriate mental health care, is in the Central District, which has a very strong interest in addressing this issue.

It is true that Wexford Health Services provides medical care for multiple Illinois correctional facilities, including facilities in the Northern District. Nevertheless, this case is about care at Dwight Correctional Center. The fact that Wexford Health Services provides care to inmates at other locations is not central to this case. Similarly, even if some of the inmates at Dwight Correctional Center are from the Northern District, they are receiving care in the Central District while they are incarcerated. Their original residence is not germane to the issues in this case. Accordingly, the forums' relationship with the cause of action factor strongly favors transfer.

Finally, the court will briefly consider the speed at which both fora will resolve this matter. Generally, Federal Court Management Statistics cited by Ms. Rendon show that Northern District's median time from filing to disposition is 6.2 months while in the Central District it is 9.9 months. In addition, the median time from filing to trial in the Northern District is 27.8 months, while in the Central District it is 31 months. These speeds are close enough to not sway the court either way.

### III. Conclusion

After carefully considering all of the above factors, the court finds that the factors supporting denial of the motion to transfer, including the understandable preference of Ms. Czubernat's relatives to proceed where they reside, do not outweigh the significant ties that this action has to the Central District. The situs of material events, availability of evidence, convenience to the parties, and the Central District's relationship to the cause of action favor transfer and outweigh the factors against transfer. Accordingly, in an exercise of the court's discretion, the defendants' motion to transfer this action to the United States District Court for the Central District of Illinois [63] is granted and the clerk is directed to transfer this action forthwith. In light of this ruling, the court will not consider the parties' other pending motions.

DATE: December 10, 2010

                                                  Blanche M. Manning
United States District Judge